IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEAU RIVAGE RESORTS, INC.** § | | **PLAINTIFF** |
| § | | |
| v. § | | |
| § | | |
| **BEL AIRE PRODUCTIONS,** § | | |
| **INC. and TARRAGON WEST** § | | |
| **ENTERTAINMENT, INC.** § | | **DEFENDANTS** |
| § | | |
| § | | |
| § | | **CAUSE NO. 1:07CV49 LG-JMR** |
| § | | |
| § | | |
| **BEL AIRE PRODUCTIONS, INC.** § | | **CROSS-PLAINTIFF/** |
| § | | **CROSS-DEFENDANT** |
| v. § | | |
| § | | |
| **TARRAGON WEST** § | | **CROSS-DEFENDANT/** |
| **ENTERTAINMENT, INC.** § | | **CROSS-PLAINTIFF** |

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the Motions for Summary Judgment [145, 147] filed by Tarragon West Entertainment, Inc. requesting summary judgment as to Bel Aire Productions, Inc.'s cross-claims [145] and Beau Rivage Resorts, Inc.'s counterclaim [147]. Bel Aire and Beau Rivage have responded to their respective motions, and Tarragon has filed a combined reply. After due consideration of the submissions and the relevant law, it is the Court's opinion that Tarragon is entitled to *Noerr-Pennington* immunity from Bel Aire's cross-claims and Beau Rivage's counterclaim. The Motions will therefore be granted.

DISCUSSION

Beau Rivage filed this suit seeking declaratory, interpleader and injunctive relief against the Defendants, Bel Aire and Tarragon, after receiving notice, in the form of a cease-and-desist

letter from Tarragon, that Bel Aire and Tarragon asserted competing rights to a dance production to be performed at the Beau Rivage - "Imaginaya." In response to the Beau Rivage Complaint, Tarragon asserted a counterclaim against Beau Rivage and cross-claims against Bel-Aire. As to Beau Rivage, Tarragon makes claims of breach of contract, interference with business relations, interference with contractual relations, conversion, defamation, misrepresentation, unjust enrichment and civil conspiracy. Ct. R. 94 p. 16-22. As to Bel Aire, Tarragon makes claims of breach of contract, interference with business relations, interference with contractual relations, conversion, defamation, misrepresentation, good faith and fair dealing, unjust enrichment, and seeks indemnity and contribution from Bel Aire. Ct. R. 94 p. 24-30.[1]

Beau Rivage asserts its own counterclaim against Tarragon for what Beau Rivage believes was Tarragon's wrongful claim of ownership. Ct. R. 86 p. 5-6. The counterclaim alleges intentional interference with the business and contractual relationship between Beau Rivage and Bel Aire, and breach of general duties of good faith and fair dealing. *Id*. at 5. Although not expressly stated, it appears that this counterclaim goes to the cease-and-desist letter; Beau Rivage alleges that because of Tarragon's actions, the opening of the production was delayed, and the Beau Rivage was "forced to immediately halt advertising and marketing efforts." *Id*.

Bel Aire asserts similar cross-claims against Tarragon. Bel Aire alleges that the cease-and-desist letter caused Beau Rivage to delay the opening of the production, resulting in damages to Bel Aire, including damage to Bel Aire's business relationships with others. Ct. R. 9 p. 12-13. Bel Aire brings tort claims of tortious interference with business relations, misrepresentation, and defamation against Tarragon. *Id* at 14-15.

---

[1] Tarragon seeks leave to amend its cross-claims and counterclaim to add claims for copyright infringement. Ct. R. 128. The motion has not yet been ruled upon.

Tarragon contends it is entitled to judgment as a matter of law as Beau Rivage's counterclaim and Bel Aire's cross-claims, all of which are based on Tarragon's cease-and-desist letter.  In the letter, Tarragon informed Bel Aire and Beau Rivage that to put on the production of "Imaginaya," without the participation of Tarragon, would infringe upon Tarragon's rights, as the owner of "Red Dream" and "Krasnaya."  Ct. R. 1-2. p. 1-2.  Tarragon asserts that it had a reasonable basis for believing that its rights were being violated, and therefore the assertion of its rights through transmittal of the cease-and-desist letter is protected by the *Noerr-Pennington* doctrine.  In the alternative, if *Noerr-Pennington* is not applicable, Tarragon argues that it is entitled to summary judgment on the merits of the counter and cross-claims

<u>*Noerr-Pennington* doctrine</u>:

"The essence of the doctrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent."  *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So.2d 163, 171 (Miss. 2001).  Although the *Noerr-Pennington* doctrine originated in the interpretation of federal antitrust laws, the Mississippi Supreme Court explicitly recognized its applicability to state-law claims.  *Id.*  Thus, the *Noerr-Pennington* doctrine precludes liability for tort claims such as tortious interference with contractual relations.  *Id.*  Furthermore, the doctrine applies to pre-litigation actions, as long as there is some reasonable basis for the asserted claim.[2]  *Coastal States*

---

[2] There is case law to the contrary.  The Tenth Circuit has determined that *Noerr-Pennington*, although based in part on constitutional principles, is not itself constitutional. *See Cardtoons v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889-91 (10th Cir. 2000). "[P]urely private threats of litigation are not protected because there is no petition addressed to the government." *Id.* at 893; *see also Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1307 (Fed. Cir. 1999) (recognizing that contacts with patentee's potential licensees are not entitled to immunity because the contacts "had nothing to do with petitioning the government").

*Mktg., Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983).  *See also Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1376-77 (Fed. Cir. 2004); *Versatile Plastics v. Sknowbest!, Inc.*, 247 F. Supp. 2d 1098, 1103 (E.D. Wis. 2003); *Thermos Co. v. Igloo Prod. Corp.*, 1995 WL 842002 at * 4-5 (N.D. Ill. Sept. 27, 1995).  Thus, the *Noerr-Pennington* doctrine applies to Tarragon's cease-and-desist letter.

The U.S. Supreme Court has allowed only one exception to the *Noerr-Pennington* doctrine - the "sham" exception.  *See Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380 (1991).  The "sham exception" is said to apply when one party has begun litigation not to win that litigation, but rather to force its competitor to waste time and money in defending itself.  *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988).  As explained by the Supreme Court:

> We now outline a two-part definition of "sham" litigation.  First, the lawsuit must be objectively baseless in a sense that no reasonable litigant could realistically expect success on the merits.  If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the "sham" exception must fail.  Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.  Under the second part of our definition of "sham" the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," through the "use [of] the governmental process-as opposed to the outcome of that process-as an anticompetitive weapon."  This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* liability.

*Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (citations omitted and emphasis in original).

Bel Aire and Beau Rivage argue that there is at least a question of fact as to whether Tarragon's action in sending the cease and desist letter was "objectively baseless."  These parties

contend that Tarragon did not see "Imaginaya" prior to sending the letter, and therefore it could not have reasonably believed that the production was a revision of "Red Dream" and/or "Krasnaya" at the time.

In response, Tarragon argues that "Imaginaya" was advertised before its opening by Bel Aire and Beau Rivage as a show similar to "Red Dream" and "Krasnaya," with largely the same participants.  Galinda Kubrak of Tarragon testified that she was notified that the Beau Rivage was advertising "Imaginaya" on the internet in December 2006, before the show opened.  Ct. R. 151-3 p. 169.  From the information relayed to her about the advertisement, she believed it was "her" show ". . . because without any further investigation I knew that Duhova cannot be appearance without me and if she does, it's then - - it jumps through me, through my head."  *Id*. at 170.  Tarragon provides a copy of the advertisement, which says, ". . . see the latest spectacular production from the creative virtuoso responsible for the unforgettable Red Dream and Krasnaya!"  Ct. R. 157-2.

In the Court's opinion, this evidence is sufficient to establish that Tarragon's transmittal of the cease-and-desist letter was not objectively baseless.  Neither Bel Aire nor Beau Rivage offer any evidence which would create a question of fact as to whether Tarragon's belief that "Imaginaya" was derived from "Red Dream" and "Krasnaya" was unreasonable, and therefore its cease and desist letter was objectively baseless.  *See Sanitec Indus., Inc. v. Micro-Waste Corp.*, 2006 WL 1544529 *6 n. 4 (S.D. Tex. June 2, 2006); *see also Amer. Home Prod. Corp. v. Johnson & Johnson Corp.*, 1994 WL 46522 at *1 (E.D. Pa. Feb. 15, 1994) (stating that the question of objectively baseless is a mixed one of fact and law).  Bel Aire and Beau Rivage submit evidence supporting its position that "Imaginaya" was not, in fact, a revision of "Red

Dream" or "Krasnaya," but that is not an appropriate inquiry for the *Noerr-Pennington* issue now before the Court.

The Court therefore finds that the sham exception does not apply, and Tarragon's actions in sending the cease-and-desist letter are protected by the *Noerr Pennington* doctrine. This conclusion renders analysis of Tarragon's remaining arguments unnecessary. Beau Rivage's counterclaim and Bel Aire's cross-claims, all of which are based on Tarragon's cease-and-desist letter, must therefore be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [145] filed by Tarragon West Entertainment, Inc. requesting summary judgment as to Bel Aire Productions, Inc.'s cross-claims is **GRANTED**. Bel Aire's cross-claims against Tarragon are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary Judgment [147] filed by Tarragon West Entertainment, Inc. requesting summary judgment as to and Beau Rivage Resorts, Inc.'s counterclaim is **GRANTED**. Beau Rivage's counterclaim is **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 24th day of April, 2008.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE